**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

LAWRENCE MILLER,                              )
                                              )
              Plaintiff,                      )
v.                                            )          **Civil Action No. 2:20-00656**
                                              )
JEFF SANDY, *et al.*,                         )
                                              )
              Defendants.                     )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss (Document No. 3), filed on

October 13, 2020. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th

Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit

Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are

challenged by the Defendants in moving to dismiss. (Document No. 7.) Plaintiff filed his Response

in Opposition on December 23, 2020. (Document No. 12.) On January 25, 2021, Defendants filed

their Reply. (Document No. 13). (Id.) Having examined the record and considered the applicable

law, the undersigned has concluded that Defendants' Motion to Dismiss (Document No. 3) should

be granted.

## PROCEDURAL BACKGROUND

On May 27, 2020, Plaintiff, acting *pro se*,[1] filed in the Circuit Court of Kanawha County

a Complaint alleging a violation of his constitutional rights. (Document No. 1-1, pp. 2 – 15.)

Plaintiff named the following as Defendants: (1) Jeff Sandy; (2) Betsy Jividen; (3) Russell Maston;

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a
less stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(4) Jack Stolling; (5) Steven Kolinofski; (6) Michael Bolen; (7) Misty Adams; (8) Don Springston; (9) John Drake; (10) Paul Gordan; (11) C.J. Rider; (12) David Smith; (13) Robbie Sellers; (14) Inv. Cool; (15) Dennis Brown; (16) Dave Pancake; (17) Dianne Monisat; and (18) Shellia Doe. (Id., p. 3.) In his Complaint, Plaintiff alleges that Defendants violated his First Amendment rights. (Id., p. 9.) Concerning "Claim 1," Plaintiff alleges that Defendants violated his First Amendment rights as to freedom of religion, freedom of speech and freedom of press. (Id.) Regarding "Claim 2," Plaintiff alleges that Defendants violated the Establishment Clause and the Separation of Church and State Clause of the First Amendment. (Id.) In support, Plaintiff alleges that on July 8, 2019, at approximately 8:30 a.m., he was at his employment assignment in the Maintenance Department at St. Marys Correctional Center. (Id., p. 10.) Plaintiff states that while he and Inmate Raymond Whitley were waiting for their daily assignment, they "were sharing the typical everyday conversation and laughing." (Id.) Plaintiff acknowledges that when Supervisor David Pancake sent the paint crew back to the housing unit, Plaintiff said to Inmate Whitley "Hey Whit, no black guys today." (Id.) Plaintiff alleges that he made his statement in a joking manner, and both he and Whitely laughed and went about their business. (Id.) Plaintiff alleges that he worked until 10:30 a.m., when he took his lunch break. (Id.) Plaintiff states that upon returning to work in the Maintenance Department at 11:00 a.m., Plaintiff was informed that he had been suspended for three (3) days by Correctional Officer ("CO") Brown and Supervisor Pancake for Insolence. (Id.) Plaintiff alleges that on the same day, he spoke with Job Coordinator Diana Monisat. (Id.) Plaintiff contends that he explained the foregoing to Ms. Monisat and Ms. Monisat informed Plaintiff that she would "look into the incident." (Id.) On July 9, 2019, Plaintiff states he was informed by CO Brown, Supervisor Pancake, and Dave Ray that Plaintiff "had been terminated because they couldn't give him a three (3) day suspension per policy." (Id.) Plaintiff states that he filed for a Job

Loss Committee Hearing through the Job's Office on the same day (July 9, 2019). (Id.) Plaintiff alleges that on July 11, 2019, Investigators Sellers and Cool searched Plaintiff's living area and discovered "two (2) copied pages from Newsweek Magazine, along with the FOURTEEN (14) WORDS, that was in his Address Book." (Id.)

Plaintiff states that on July 12, 2019, he attended his Job Loss Review Hearing that was conducted by Don Springston, Dianne Monistat, and Steven Kolinofski. (Id., p. 11.) Plaintiff explains that after discussing what had transpired in the Maintenance Department, Steven Kolinofski inquired if there was an incident involving Plaintiff the day prior to the hearing. (Id.) Plaintiff states that he confirmed that his living area was searched, and property was seized. (Id.) Plaintiff complains that Steven Kolinofski then informed Plaintiff that the Committee was going to wait until the issue involving the seized property was "taken care of before they made a decision in the employment matter." (Id.) On July 15, 2019, Plaintiff alleges that CO Coleman and an unknown CO escorted Plaintiff to Intake where Plaintiff was served with two Disciplinary Incident Reports (Docket Nos. 206397 and 206399) for allegedly violating WV DOC Policy 325.00 § 1.27 on two (2) separation occasions. (Id.)

Plaintiff alleges that he appeared before CHO Paul Gordon on July 23, 2019 to answer the allegations pertaining to the Disciplinary Incident Report involving Inmate Raymond Whitley. (Id.) Plaintiff alleges that he informed CHO Gordon that he was only joking with Inmate Whitely and the entire incident was "blown out of portion." (Id.) Plaintiff also states that Inmate Whitely stated that he did not feel Plaintiff was being racist and/or racially bias. (Id.) Plaintiff, however, complains that CHO Gordon found Plaintiff guilty of using racial slurs. (Id.) Plaintiff alleges that "[t]his entire incident was nothing more than a device to terminate the Plaintiff from his employment and transfer him out of the facility." (Id.)

3

Plaintiff alleges that he appeared before CHO Gordon on July 30, 2019 to answer the allegations pertaining to the Disciplinary Incident Report involving his possession of "an article out of Newsweek Magazine (4/27/17) with two pictures that had the phrases: 'Don't Apologize For Being White' and 'I Want You To Be A Racist;" along with his Address Book that had the 14 WORDS.'" (Id., pp. 11 – 12.) Plaintiff complains that CHO Gordon found Plaintiff guilty of Possession of Hate Literature. (Id., p. 11.) Plaintiff, however, argues "[t]here is nothing in the 14 WORDS that is even remotely racist, it merely gives that same message that the Christian Bible gives pertaining to mixed race marriages and child birth: 'We must secure the existence of our race and a future for white children.'" (Id., p. 12.) Plaintiff claims that "[t]he same 14 WORDS are used for every ethnic group with the exception of substituting the ethnic name instead of 'white.'" (Id.) Plaintiff further argues he obtained his copies of this Newsweek Article from the Library, which was available for inmate viewing. (Id.) Plaintiff argues that "[t]his means that it is NOT illegal or racist" because "it would not have been for inmate viewing." (Id.)

Finally, Plaintiff complains that was improperly denied a periodical after he was transferred to Huttonsville Correctional Center ("HCC"). (Id.) Plaintiff explains that his mother inquired of Mailroom Supervisor Melissa Smith as to whether Plaintiff could receive a periodical. (Id.) Plaintiff contends that Mailroom Smith informed his mother that Plaintiff could receive such if it was from a vendor. (Id.) Plaintiff complains that his mother ordered the periodical in accordance with DOC Policy, but when the periodical arrived, it was returned to the vendor. (Id.) Plaintiff alleges that "the periodical was returned in violation of the 1st Amendment Freedom of Speech Clause, which provides that before a publication can be returned to the vendor, the sender and recipient must be informed that it was being denied and the reason why, so that either party has an equal opportunity to dispute the action." (Id.) Concerning the 14 WORDS, Plaintiff states that he

4

"has researched and acquired case law that proves his claim that he is permitted to have literature that can be perceived as racist/supremist view, as long as it is not so inflammatory as to cause unrest or any other racial conflict." (Id.) Additionally, Plaintiff argues that "if the 14 WORDS are racists, the verses in the Bible are also racists and are not permitted to be possessed by inmates." (Id., pp. 12 – 13.) Plaintiff contends that "one religion cannot be afforded favoritism over another" because "[i]n the event that one (1) belief and/or religious groups is given privileges that ALL others are not, it violates the 1st Amendment, RLUIPA, and the Equal Treatment Clause." (Id.) Plaintiff requests monetary relief and "all information pertaining to the incidents leading up to this action be expunged from his Inmate File." (Id., pp. 13 – 14.)

As Exhibits, Plaintiff attaches the following: (1) A copy of his "Discipline Appeal Decision" dated September 20, 2019, regarding Disciplinary Violation Docket No. 206397 (Id., p. 16.); (2) A copy of a letter from Plaintiff to the Commissioner stating that he wished to "appeal these two Dockets 206399 and 206397" (Id., p. 17.); (3) A copy of Superintendent Russell Maston's denial of Plaintiff's "Appeal Request" dated August 12, 2019, concerning the Disciplinary Incident Report Docket No. 206397 charging Plaintiff with violating Section 1.27, Hate/Gang Activity (Id., p. 18.); (4) A copy of Plaintiff's "Appeal to the Warden" dated August 1, 2019, regarding the Disciplinary Incident Report Docket No. 206397 (Id., pp. 19 – 22.); (5) A copy of Plaintiff's Disciplinary Incident Report Docket No. 206397 charging Plaintiff with violating Section 1.27, Hate/Gang Activity (Id., pp. 23 – 24.); (6) A copy of Plaintiff's "Hearing Report" concerning Disciplinary Incident Report Docket No. 206397 (Id., pp. 25 – 27.); (7) A copy of Superintendent Russell Maston's denial of Plaintiff's "Appeal Request" dated August 12, 2009, concerning Disciplinary Incident Report Docket No. 206399 for violation of Section 1.27, Hate/Gang Activity (Id., p. 28.); (8) A copy of Plaintiff's "Appeal to the Warden" dated July 29,

5

2019, regarding Disciplinary Incident Report Docket No. 206399 (Id., pp. 29 - 32.); (9) A copy of

Plaintiff's Disciplinary Incident Report Docket No. 206399 charging Plaintiff with violating

Section 1.27, Hate/Gang Activity (Id., pp. 33 – 34.); and (10) A copy of Plaintiff's "Hearing

Report" concerning Disciplinary Incident Report Docket No. 206399 (Id., pp. 35 – 37.).

By Order entered on September 3, 2020, Kanawha County Circuit Court Judge Jennifer F.

Bailey determined that Plaintiff had failed to state a plausible claim against Defendants Jack

Stollings, Misty Adams, John Drake, C.J. Rider, David Smith, and Shiela Doe. (Document No. 1-

2.) On September 8, 2020, the Kanawha County Circuit Court issued Summonses on behalf of

Plaintiff for the remaining Defendants. (Document Nos. 1-3 and 1-5.) On September 29, 2020,

Defendants filed a Notice of Bona Fide Defense. (Document No. 1-4.) On October 6, 2020, the

above action from removed to this Court. (Document Nos. 1 and 1-6.) Specifically, Defendants

filed their Petition/Notice of Removal and paid the required filing fee (Id.) On October 13, 2020,

Defendants filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 3 and 5.) In

their Motion to Dismiss, Defendants argue that Plaintiff's Amended Complaint should be

dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies as

required by law (Document No. 5, pp. 7 – 11.); (2) "To the extent Plaintiff's free exercise claim is

brought pursuant to RLUIPA, it must fail as Plaintiff has failed to plead he is a member of a bona

fide faith, that he has been substantially burden, or that he ever sought accommodations" (Id., pp.

11 – 13.); (3) "Plaintiff First Amendment claim premised on a violation of the free exercise of

religion must be dismissed for failure to successfully establish a free exercise claim under

RLUIPA" (Id., pp. 13 – 14.); (4) "Plaintiff's First Amendment claim premised on an alleged

violation of his Freedom of Speech must fail because there was a legitimate penological interest

present" (Id., pp. 14 – 15); (5) "Even if Plaintiff's Freedom of Speech claim was valid, none of the

SMCCJ employees would be liable" (Id., pp. 15 – 16.); (6) "Plaintiff has failed to state a claim for violation of the right for free press" (Id., p. 16.); (7) "Plaintiff has failed to plead facts sufficient to state a cause of action for a violation of the Establishment Clause" (Id., p. 16 – 17.); (8) "Plaintiff is not entitled to attorney's fees as Plaintiff is proceeding *pro se*" (Id., p. 17.); (9) "Defendants are entitled to qualified immunity for these claims as there was no clearly establish right of Plaintiff violated in this matter" (Id., pp. 17 – 19); and (10) "None of the Defendants can be liable to Plaintiff in their official capacity" (Id., p. 19.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on the same day, advising him of the right to file a response to Defendants' Motion to Dismiss. (Document No. 7.) Plaintiff filed a Motion for Appointment of Counsel on November 30, 2020, and the undersigned denied the Motion on December 1, 2020. (Document Nos. 9 and 10.) On December 23, 2020, Plaintiff filed his Response in Opposition to Defendants' Motion to Dismiss. (Document No. 12.) On January 25, 2021, Defendants filed their Reply to Plaintiff's Response in Opposition. (Document No. 13.)

## THE STANDARD

A Rule 12(b)(6) motion requests dismissal for failure to state a claim upon which relief can be granted and tests the legal sufficiency of the complaint or pleading. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements

7

of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

A.    **Improper Parties**:

In his Complaint, Plaintiff states that he is suing all Defendants in their individual and official capacities. (Document No. 1-1, p. 14.) Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[2] See Will v.

---

[2] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

<u>Michigan Dept. of State Police</u>, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); <u>Westinghouse Elec. Corp. v. West Virginia Dept. of Highways</u>, 845 F.2d 468, 470 (4th Cir.), <u>cert. denied</u>, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." <u>Pennhurst</u>, 465 U.S. at 117, 104 S.Ct. at 917. <u>See also</u> <u>Fauconier v. Clarke</u>, 966 F.3d 265, 279-80 (4th Cir. 2020)(an individual that is employed by an arm of the State and is sued in his or her official capacity is immune from suit under the Eleventh Amendment); <u>Cromer v. Brown</u>, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." <u>Will</u>, <u>supra</u>, 491 U.S. at 71, 109 S.Ct. at 2312. In <u>Will</u>, however, the Supreme Court held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." <u>Id.</u>; <u>also see</u> <u>Frew v. Hawkins</u>, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)("the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law"). To the extent Plaintiff seeks monetary damages from the Defendants in their official capacity, the undersigned finds that Plaintiff's claims

---

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

are barred by the Eleventh Amendment and should be dismissed. See Adams v. Ferguson, 884 F.3d 219 (4th Cir. 2018)("[T]he Eleventh Amendment does not bar an award of damages against an official in his personal capacity that can be executed only against the official's personal assets.") Additionally, the undersigned finds that Defendants acting in their official capacity are not "persons" as required by Section 1983. Accordingly, the undersigned respectfully recommends that the District Court dismiss Plaintiff's official capacity claims against Defendants to the extent Plaintiff seeks monetary relief.

**B.    Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'"); also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

Similar to the PLRA, the West Virginia Prisoner Litigation Reform Act ("WVPLRA") requires an inmate to exhaust the agency's procedures before filing a civil action regarding an ordinary administrative remedy. W.Va. Code § 25-1A-2(c). An "ordinary administrative remedy" is defined as "a formal administrative process by which an inmate submits a grievance seeking redress and presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." W. Va. Code § 25-1A-2(a). Exhaustion of an

ordinary administrative remedy is satisfied upon a showing of the following:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director the Regional Jail Authority, or the Director's designee.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983 or <u>Bivens</u> action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in

Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that she has exhausted her administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies). Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an

13

administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

West Virginia Division of Corrections Policy Directive 335.00 (codified in the W. Va. Code of State Rules), which was in effect at the time of the incidents described in Plaintiff's Complaint, sets forth the administrative remedy process. An inmate initiates the administrative process by filing a grievance.[4] Specifically, an inmate must first file a grievance utilizing a grievance form "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." W. Va. Code R. § 90-9-4.1. Only one issue or complaint may be grieved per form, and the inmate must submit it to his/her Unit Manager. Id. § 90-9-4.2 – 4.3. The Unit Manager is required to ensure that an answer to the grievance is provided to the inmate within five days. Id. § 90-9-4.5. Next, the inmate may appeal the Unit Manager's response "to the Warden/Administrator within five (5) days from delivery of the response to his/her grievance" using the same form submitted to the Unit Manager. Id. § 90-9-5.1. "The Warden/Administrator shall respond to the

---

[4] A "grievance" is defined to "mean the formal process by which an inmate seeks redress over any matter concerning prison life, whether it involves general circumstances or particular episodes." W. Va. Code St. R. § 90-9-4.1.

appeal . . . within five (5) days." Id. § 90-9-5.4. Finally, the inmate may appeal the Warden's response "to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response . . . using the same form . . ." Id. § 90-9-6.1. "*Only one grievance per envelope shall be permitted*" and "submission of multiple grievance . . . shall be grounds for rejection for the entire mailing . . .." Id.(emphasis in original). "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." Id. § 90-9-6.4.

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies pursuant to the PLRA or the WVPLRA. (Document No. 3 and Document No. 5, pp. 7 – 11.) Defendants note that even though Plaintiff attaches documents allegedly supporting the exhaustion of his administrative remedies, Defendants state that such do not support a finding of exhaustion of the First Amendment and RLUIPA claims as set forth in Plaintiff's Complaint. (Document No. 5, p. 10.) Defendants state that "[t]he documents Plaintiff attached to the Complaint are limited to the Disciplinary Incident Reports by which Plaintiff was charged with violating WVDOC policies, Hearing Reports detailing the evidence presented and the Chief Hearing Officer's guilty findings, and Plaintiff's appeals of those guilty findings." (Id., p. 9.) Defendants note that "[t]he documents produced by Plaintiff do not include any documentation of grievances filed by Plaintiff seeking relief of the issues of confinement outlined in his Complaint." (Id.) Defendants explain that "those documents evidence only that Plaintiff has appealed the Hearing Officer's determination of guilt on both Disciplinary Incident Reports to the Warden/Administrator and then to the Commissioner, which is an entirely different matter and has to do with the discipline enforced on Plaintiff versus the taking of his written materials or his loss of an inmate work detail due to the racist statements he admitted making while he challenges its

15

characterization." (<u>Id.</u>) Therefore, Defendants argue that Plaintiff has failed to exhaust his administrative remedies concerning all claims asserted in his Complaint. (<u>Id.</u>, pp. 10 - 11.)

In Response, Plaintiff first contends that he did exhaust his administrative remedies concerning his claims before he was transferred to HCC. (Document No. 12, pp.1 - 2.) Plaintiff claims that he filed grievances "addressing the matter at hand" while he was incarcerated at St. Marys Correctional Center "and as a result, [Plaintiff] was transferred to Northern Correctional Center and Jail." (<u>Id.</u>) Plaintiff alleges that when he was transferred to HCC "and his tablet account was activated, the grievances he filed were no longer in the system." (<u>Id.</u>, p. 2.) Plaintiff then contends that he attempted to refile his grievances at HCC, but his grievances were rejected "due to the fifteen (15) day time limit expiring." (<u>Id.</u>) Finally, Plaintiff argues that "prior to filing his 42 U.S.C. § 1983 Complaint, the Plaintiff exhausted the appeal process as provided in West Virginia Division of Corrections Policy Directive 325.00, Discipline of Inmates, through the Commissioner's level." (<u>Id.</u>, p. 3.)

In Reply, Defendants argue that Plaintiff presents contradictory claims. (Document No. 13, pp. 2 – 4.) Defendants note that Plaintiff first claims that he filed grievances addressing the matters at hand before being transferred to HCC. (<u>Id.</u>, p. 2.) Defendants noted that Plaintiff then asserts that the attempted to refile his grievances because the grievances were not in the system at HCC. (<u>Id.</u>) Defendants argue that "[i]t is unclear why Plaintiff asserts he attempted to refile his grievances when he later claims in his Response that he actually did exhaust the appeal process as provided by WVDCR policy on exhausting administrative remedies." (<u>Id.</u>, p. 3.) Defendants argue that this Court should not give merit to Plaintiff's bald assertion that he exhausted his administrative remedies. (<u>Id.</u>) Defendants further argue that to the extent Plaintiff is relying upon documents attached to his Complaint as proof of exhaustion, such is inadequate. (<u>Id.</u>, pp. 3 – 4.) Defendants

note that the "documents attached include only the Disciplinary Incident Reports, the Hearing Reports, and Plaintiff's appeals of the guilty findings at his hearings." (Id.) Defendants contend that "[t]hese documents do not evidence the Plaintiff grieved the taking of his written materials or his loss of an inmate work detail due to the racist statement he admitted making." (Id., p. 4.) Defendants argue that "[i]t is clear that Plaintiff only appealed the findings that he was guilty of possessing hate materials and did not file any grievance with respect to the matters at hand." (Id.) In support, the Defendants submit the Affidavit of Russell Maston, the Superintendent of St. Marys Correctional Center and Jail. (Document No. 13-1.) Mr. Maston declares as follows:

1. That at all times alleged in Plaintiff's Complaint, I was the Superintendent at Saint Marys Correctional Center and Jail. I have reviewed the records of the institution relevant to the Plaintiffs' Complaint and the grievance process in this matter.

2. Plaintiff Lawrence Miller did not at any point file a grievance with respect to any of the claims that Lawrance Miller makes in his Complaint.

3. The documents attached to Plaintiff's Complaint are not grievance nor the appeals to a grievance. Receiving a disciplinary action is not a grievance and appealing a decision in a disciplinary action is not appealing a grievance.

(Id., p. 2.)

Based upon a review of the record, the undersigned finds that Defendants have met their burden proving that Plaintiff failed to exhaust his administrative remedies concerning the First Amendment and RLUIPA claims as asserted in his Complaint. The record is completely void of any evidence that Plaintiff filed any timely grievances concerning his First Amendment and RLUIPA claims. Although Plaintiff vaguely contends that he filed timely grievances concerning his First Amendment and RLUIPA claims, nowhere does Plaintiff provide any specific details regarding the allegedly missing grievances or how the Defendants interfered with the same. See

Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed); McMillian v. N.C. Central Prison, 2013 WL 1146670, * 5 (E.D.N.C. March 19, 2013)(An inmate's allegations that grievances were not accepted by staff, "without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, are insufficient to refute defendants' arguments in support of their exhaustion defense."), aff'd, 534 Fed.Appx. 221 (4th Cir. 2013); Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004)(finding inmate's unsupported allegation that prison staff had a practice of destroying or misplacing grievances was insufficient to prove unavailability of the grievance procedure). Furthermore, Plaintiff clearly refers to the appeal concerning his disciplinary proceedings as support for his claim of exhaustion. A careful review of Plaintiff's Complaint and Response in Opposition indicates that Plaintiff believes appealing his finding of guilty on the charges contained in the Disciplinary Incident Reports exhausted his administrative remedies concerning his First Amendment and RLUIPA claims. Plaintiff's appeals concerning his disciplinary proceedings, however, were not the proper method to exhaust his First Amendment and RLUIPA claims. The undersigned, therefore, respectfully recommends that Defendants' Motion be granted and Plaintiff's Complaint be dismissed in view of his failure to exhaust his administrative remedies pursuant to the PLRA and the WVPLRA. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's claim.

18

## <u>PROPOSAL AND RECOMMENDATION</u>

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (Document No. 3), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 27, 2021.



Omar J. Aboulhosn
United States Magistrate Judge